J. T. SHELTON *v*. NATIONAL FIRE INSURANCE COMPANY

(No. 7885)

Submitted May 16, 1934.   Decided June 12, 1934.

*Steptoe & Johnson, Stanley C. Morris* and *J. Hornor Davis, 2d,* for plaintiff in error.

*Mohler & Peters,* for defendant in error.

LITZ, JUDGE:

This is an action under an insurance policy, issued by defendant, National Fire Insurance Company, to plaintiff, J. T. Shelton, insuring his automobile against "Theft, robbery and pilferage, excepting by any person or persons * * * in the assured's service or employment, whether the theft, robbery or pilferage occurs during the hours of such service or employment or not; and excepting by any person, or agent thereof * * * to which person, * * * assured, or anyone acting under express or implied authority of the assured, voluntarily parts with title and-or possession, whether or not induced so to do by any fraudulent scheme, trick, device or false pretense * * *."

About two p. m., July 22, 1932, Shelton engaged Stanley Sheppard, a young colored man who operated an automobile wash rack at Glen Ferris, Kanawha County, to take his automobile from a nearby garage to the rack, wash, and return it by 4:45. After washing the car, Sheppard, accompanied by another young colored man, started in it to Gauley Bridge, two miles east of Glen Ferris, for the alleged purpose of securing some wax to polish it. He had proceeded about half the distance, when the car struck another automobile moving in the same direction, causing injury to both machines.

A member of the state police, who immediately appeared at the place of accident, inquired of Sheppard if he had a driver's license. It does not appear what response Sheppard made, but he soon left the scene in a car driven in the opposite direction, stating that he was going to Montgomery, several miles distant, for his license. He did not return. The following morning, Shelton obtained a warrant from a justice, charging Sheppard with the larceny of the car. Sheppard left the community before the warrant could be served and was later

heard of in Birmingham, Alabama, his former place of residence.

This action, brought before a justice for the damage to plaintiff's automobile, is predicated upon the theory that Sheppard had stolen the car and was leaving the state with it at the time of the collision. The justice gave judgment for $242.23, and the court of common pleas of Kanawha County, upon appeal, entered judgment for the same amount after trial by jury.

The grounds relied on by defendant for reversal, follow: (1) the evidence is insufficient to prove larceny of the car by Sheppard; (2) Sheppard was "in the insured's service or employment"; and (3) plaintiff voluntarily parted with possession of the car to him.

The evidence, in our opinion, does not tend to prove that Sheppard was on other than an innocent mission when the car was injured. He had been accustomed to driving automobiles, entrusted to his care to be cleaned, on trips to Gauley Bridge for supplies.

Was Sheppard, by virtue of his engagement to wash the car, in the service or employment of Shelton within the meaning of the policy? We think not. It is said that the purpose of this provision is to prevent fraud and collusion by and between the assured and persons in his household, service or employment. "To be in the service or employment of the assured, within the meaning of this provision (like the one in question) it is essential that the person taking the car must have been subject to the control and direction of the assured and bound to render personal service to him." Berry on Automobiles and Insurance, 4th Edition, section 1931. "A garage keeper, at whose place of business the machine is left for repairs, is not in the 'service or employment' of the owner." Huddy, Cyc. Automobile Law, 13-14, section 358. In *Rogers* v. *Boyers*, 114 W. Va. 107, 170 S. E. 905, a mechanic was engaged by the owner to take an automobile to the shop for repair and return it after completing the work. The car, while being returned by the mechanic after it had been serviced, collided with a motorcycle. The action was instituted by the rider of the motorcycle, who

had been injured in the collision, against the owner of the automobile. Damages were denied on the ground that the garage man was an independent contractor and not the servant of the defendant. In *Oakley* v. *Thornbury*, 114 W. Va. 188, 171 S. E. 426, a like holding was made under similar facts.

The plaintiff, in our opinion, voluntarily parted with possession of the car to Sheppard, in contemplation of the exception. In *Stuart Motor Company* v. *General Exchange Insurance Corporation*, (Tex. Civ. App.) 43 S. W. (2d) 647, an automobile was delivered to a prospective purchaser for a short drive. The car was never returned. The court, in holding that the owner could not recover for the theft thereof under a policy similar to the one involved in this case, stated: "* * * it seems to us that the parting of possession, as used in the policy here, contemplated that it might only be temporary, as cases where possession is obtained by fraudulent schemes, tricks, and devices usually arise where the owner delivers the possession with the intention that it will be only temporary. There may be cases where the pretext would be such that the owner would intend to part both with the title and possession, but it would be a rare case indeed where an owner would intend to part with the permanent possession and not also the title upon a fraudulent representation. We therefore must conclude that the exception contained in the policy clearly included a loss under facts such as we have before us, and that we would not be at liberty to otherwise construe it."

The judgment, complained of, is reversed, the verdict set aside and a new trial granted.

*Judgment reversed; verdict set aside;*
*new trial granted.*